IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicholas Caruccio,      :
       Petitioner  :
            :
  v.         :  No. 726 C.D. 2022
            :  Submitted: April 14, 2023
Shrewsbury Borough (Workers'  :
Compensation Appeal Board),  :
       Respondent :

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS         FILED: October 3, 2023

    Nicholas Caruccio (Claimant) has petitioned this Court to review an adjudication of the Workers' Compensation Appeal Board (Board), which affirmed the decision of the Workers' Compensation Judge (WCJ). The WCJ denied Claimant's petition for benefits under the occupational disease provisions of the Workers' Compensation Act (the Act).[1] In this appeal, Claimant contends that the WCJ imposed an incorrect, elevated burden of proof and that he is entitled to benefits pursuant to *City of Philadelphia Fire Department v. Workers' Compensation Appeal Board (Sladek)*, 195 A.3d 197 (Pa. 2018) (*Sladek*) (plurality).[2] Upon careful review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710. The following occupational disease provisions of the Act are at issue in this case: (i) Section 108(r), added by the Act of July 7, 2011, P.L. 251, No. 46, 77 P.S. § 27.1(r); (ii) Section 301(f), added by Section 2 of Act 46, 77 P.S. § 414; and (iii) Section 301(c)(2), added by Section 9 of the Act of December 5, 1974, P.L. 782, 77 P.S. § 411.

[2] A majority of the Court joined Part I of *Sladek*, upon which we rely.

# I. BACKGROUND[3]

Claimant worked for Shrewsbury Borough (Employer) as a volunteer firefighter from 1987 to present, eventually achieving rank of fire department President. In December 2018, Claimant was diagnosed with chronic lymphocytic leukemia (CLL).[4] On May 4, 2020, Claimant filed a claim petition, seeking disability benefits, payment of medical bills, and counsel fees. Claimant alleged that he sustained CLL due to his exposure to carcinogens as a firefighter. Employer denied liability.

The WCJ held a hearing. Claimant testified by deposition that he was routinely exposed to diesel emissions, smoke, soot, and burning building material without protection during his firefighting career. Claimant also presented a medical report by Tee L. Guidotti, MD, MPH, DABT, a board-certified physician in internal, pulmonary, and occupational medicine. *See* Report of Dr. Guidotti at 1. Dr. Guidotti opined that Claimant was exposed to several International Agency for Research and Cancer (IARC) Group 1 carcinogens,[5] including benzene, trichloroethylene (TCE), and dioxin. According to Dr. Guidotti, Claimant's firefighting and exposure to these carcinogens was a substantial, contributing factor to elevate his general risk for cancer and specifically CLL.

---

[3] Unless stated otherwise, we adopt the factual background for this case from the WCJ's decision, which is supported by substantial evidence of record. *See* WCJ Dec., 12/01/21.

[4] CLL is a discrete species of non-Hodgkin lymphoma (NHL), a collective term for cancers of the lymphatic system other than Hodgkin disease. *See* Report of Dr. Guidotti, 4/24/20, at 5-6. CLL is also known small B-cell lymphoma (SCL). *See* Report of Dr. Sandler, 6/4/21, at 1

[5] The IARC is a specialized research group within the World Health Organization that works to identify the causes of human cancers. The agency evaluates various agents, mixtures, and exposures, and classifies them into one of five groups. Group 1 substances are considered "carcinogenic to humans." *See* IARC Monographs on the Evaluation of Carcinogenic Risks to Humans, WORLD HEALTH ORGANIZATION, https://monographs.iarc.who.int/agents-classified-by-the-iarc (last visited October 2, 2023).

In response, Employer produced a medical report from Howard M. Sandler, M.D., a physician who specializes in occupational and environmental medicine. Dr. Sandler opined that there is no reliable, scientific evidence to support a connection between Claimant's firefighting, exposure to Group 1 carcinogens, and CLL diagnosis. Further, according to Dr. Sandler, Claimant exhibited individual risk factors apart from his employment.[6]

Upon review of the evidence, the WCJ credited Dr. Sandler's opinion and rejected Dr. Guidotti's opinion to the extent they conflicted with each other. The WCJ specifically noted that Drs. Sandler and Guidotti agreed that there are no IARC Group 1 carcinogens linked to the development of CLL. As such, the WCJ denied and dismissed Claimant's petition. Claimant appealed to the Board, which affirmed the WCJ's decision. Now, Claimant timely petitions this Court for review.

## II. ISSUE

Claimant asserts that the WCJ unduly increased his burden of proof as a firefighter-claimant. *See* Pet'r's Br. at 5, 21-26. According to Claimant, a firefighter-claimant need only establish that his exposure to a Group 1 carcinogen "possibly" caused Claimant's cancer. *Id.* at 23. Claimant concludes that the expert opinion of Dr. Guidotti was sufficient to establish that CLL "must be covered as a cancer possibly related to IARC Group 1 carcinogens . . . ." *Id.* at 29.[7]

---

[6] Dr. Sandler reported that Claimant had known and suspected risk factors, including allergies, obesity, and a history of smoking. *See* Report of Dr. Sandler at 3, 14.

[7] Claimant further asserts that the "uncontested" evidence of record compels the award of benefits. *See* Pet'r's Br. at 5, 27-32. Our resolution of the first issue is dispositive. Thus, we need not reach Claimant's assertion that his evidence established a presumption of compensability. We note, however, that the record reveals that the parties submitted adversarial reports in support of their respective positions. Plainly, Employer contested Claimant's evidence.

## III. DISCUSSION[8]

### A. Introduction

In 2011, the Act was amended to include provisions specific to firefighters afflicted with cancer. It defines a framework for workers' compensation litigation that "proceeds in discrete stages." *Sladek*, 195 A.3d at 207.

First, the claimant must demonstrate that he has an occupational disease. *Id*. Section 108(r) of the Act defines occupational disease as "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the [IARC]." 77 P.S. § 27.1(r). Next, the claimant is entitled to an evidentiary presumption of compensability, provided that the claimant establishes that (1) he has four or more years of continuous firefighting duties, (2) he had direct exposure to a Group 1 carcinogen, and (3) prior to asserting a claim, or prior to engaging in firefighting duties, he passed a physical examination without evidence of cancer. *Id*.; Section 301(f) of the Act, 77 P.S. § 414.[9]

Finally, if the claimant can establish an occupational disease as defined by Section 108(r) and the evidentiary presumption of compensation as defined by Section 301(f), the burden of proof shifts to the employer, which can rebut the

---

[8] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether necessary findings of fact are supported by substantial evidence. *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017). Our review over questions of law is *de novo. See Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830, 838 (Pa. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

[9] Section 301(f) imposes an additional requirement on volunteer firefighters to establish direct exposure to a Group 1 carcinogen "as documented by reports filed pursuant to the Pennsylvania Fire Information Reporting System and provided that the member's claim is based on direct exposure to a carcinogen referred to in section 108(r)." 77 P.S. § 414. *See also Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 600-05 (Pa. Cmwlth. 2019) (*en banc*) (*Burnett*).

presumption with "substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting." Section 301(f) of the Act, 77 P.S. § 414.

### B. Evidentiary Requirements of General Causation

In this appeal, we are concerned with the first stage, that is, whether Claimant established an occupational disease as defined by Section 108(r) of the Act. Section 108(r) embodies a recognition of the dangers inherent to firefighting, which involves routine exposure to Group 1 carcinogens that cause a variety of cancers. *Sladek*, 195 A.3d at 208. Section 108(r) does not impose a heavy burden on firefighter claimants. *Id.* The general causation requirement serves a gatekeeping function: it recognizes "that different types of cancers have different etiologies[,] and it weeds out claims for compensation for cancers with no known link to Group 1 carcinogens." *Id.* The provision requires merely credible evidence of "a general causative link *between* the claimant's type of cancer *and* a Group 1 carcinogen." *Id.* (emphases added). "[E]pidemiological evidence is clearly relevant and useful" at this first stage of litigation to the extent it "can provide insight into whether the agent can cause the disease."[10] *Id.*

For example, in *Burnett*, a volunteer firefighter filed a claim following his diagnosis for large B-cell, nodular histiocytic lymphoma. 206 A.3d at 590. The claimant's medical expert opined that the claimant's workplace exposures to TCE are associated with an elevated risk of this cancer. *Id.* at 591 (citing epidemiological

---

[10] A plurality of the *Sladek* Court noted, in contrast, that the usefulness of epidemiological evidence wanes at later stages of the litigation and will likely be insufficient to rebut the evidentiary presumption of compensability under Section 301(f), 77 P.S. § 414. *See Sladek*, 195 A.3d at 209; *but see id.* at 211 (Wecht, J., concurring) ("Surely an employer can introduce epidemiological evidence showing that firefighting-related exposures never cause the firefighter's specific type of cancer without also disputing that the firefighter's type of cancer is capable of being caused by one or more Group 1 carcinogens.").

evidence, as well as a recognition by the IARC of a specific association between TCE and this particular lymphoma). The WCJ credited this evidence; the Board affirmed; and on further review, this Court agreed. Applying the analytical framework from *Sladek*, we concluded that the expert's credible testimony was sufficient to satisfy the general causation requirement in Section 108(r) of the Act. *Id.* at 608.

On the other hand, there is no requirement that a factfinder credit a firefighter-claimant's evidence of general causation. It is well settled that "[t]he WCJ is the ultimate fact finder and has complete authority for making all credibility determinations." *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 755 (Pa. Cmwlth. 2002). This settled deference to the WCJ on credibility matters is applicable in this context. *See Sladek*, 195 A.3d at 210 (advising that evidence of general causation is subject to the WCJ's credibility determinations); *see, e.g.*, *Deloatch v. Workers' Comp. Appeal Bd. (City of Phila.)*, 224 A.3d 432, 441 (Pa. Cmwlth.) (concluding that claimant established an occupational disease based on credited expert evidence of a causal link between diesel exhaust and lung cancer), *appeal denied*, 237 A.3d 973 (Pa. 2020).[11]

A recent decision by this Court in *Malone v. Workers' Compensation Appeal Board (City of Philadelphia)* (Pa. Cmwlth., No. 22 C.D. 2020, filed Jan. 6, 2021), 2021 WL 49929, is instructive.[12] In that case, the firefighter-claimant sought benefits asserting that his prostate cancer was an occupational disease caused by his

---

[11] The WCJ also determines the weight afforded evidence and may reject the testimony of any witness "in whole or in part, even if that testimony is uncontradicted." *Stalworth v. Workers' Comp. Appeal Bd. (Cnty. of Del.)*, 815 A.2d 23, 29 (Pa. Cmwlth. 2002).

[12] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The unreported decisions cited herein are cited for their persuasive value.

workplace exposure to carcinogens. *Malone*, slip op. at 2, 2021 WL 49929 at *1. The claimant and his employer introduced competing export reports addressing claimant's exposure to several IARC Group 1 carcinogens contained in smoke. *See id.* at 4-10, 2021 WL 49929 at *2-3. The employer's expert was particularly critical of the methodology and validity of claimant's expert's opinion. *See id.* at 6-7, 2021 WL 49929 at *3 (rejecting opinion because it lacked a discernible method of evaluating "whether a certain carcinogen is capable of causing a certain type of cancer").

The *Malone* WCJ did not credit the claimant's expert, finding that he had not established that any IARC Group 1 carcinogens are known to cause prostate cancer. *Id.* at 10, 2021 WL 49929 at *4 (finding the evidence "vague at best"). The Board agreed, and upon further appeal, this Court affirmed with express deference to the credibility determinations of the WCJ. *Id.* at 21-22, 2021 WL 49929 at *9 (observing that none of the credited evidence established that any IARC Group 1 carcinogen can cause prostate cancer).

### C. Claimant's Evidence was Insufficient

Based on our review of the evidence, and the WCJ's findings and credibility determinations, Claimant was unable to establish Section 108(r) general causation. In other words, based on the credited evidence, Claimant failed to demonstrate that his exposure to several IARC Group 1 carcinogens possibly caused his CLL.

In this case, Claimant's expert, Dr. Guidotti, conceded that there is no specific epidemiological evidence demonstrating a link between CLL and exposure to benzene, TCE, or dioxins. Report of Dr. Guidotti at 5-6. He explained the lack of specific evidence by noting the rarity of individual lymphomas and tendency of

7

epidemiologists to aggregate this class of diseases into a "single NHL rubric for analysis." *Id.* at 6. Dr. Guidotti also conceded that "each individual lymphoma appears to have its own profile of risk factors and causes." *Id.* Nevertheless, Dr. Guidotti pointed to an elevated risk seen in other species of NHL as evidence of general causation. *Id.* (discussing epidemiological studies linking firefighters, exposures to various carcinogens, and an elevated risk of NHL).[13]

In response, Dr. Sandler noted his agreement with Dr. Guidotti that "there is **no** scientific/medical literature, comprehensive assessments and meta-analyses to show a causal relationship between possible firefighter exposures especially those potentially received as a volunteer firefighter and the development of CLL/SCL." Report of Dr. Sandler at 7 (double emphasis in original). He was also highly critical of the studies selected, or omitted, from Dr. Guidotti's analysis. *See id.* at 7-12. For example, Dr. Sandler discussed two large meta-analyses, synthesizing data from approximately 50 studies, neither of which found a statistically significant incidence risk among firefighters for NHL. *Id.* at 7-8. Dr.

---

[13] There is no explicit requirement in Section 108(r) for a firefighter-claimant to demonstrate that firefighters are at higher risk of developing a particular cancer. The general causation requirement of Section 108(r) requires evidence linking exposure to a particular IARC Group 1 carcinogen with a particular type of cancer. *See* 77 P.S. § 27.1(r). Nevertheless, it is reasonable to present studies pertinent to firefighters, provided those studies consider the specific carcinogens and cancers relevant to an individual claimant.

Further, such studies may be essential to establishing an occupational disease under Section 108(n) of the Act. Section 108(n) includes in the definition of occupational disease "[a]ll other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population." 77 P.S. § 27.1(n). This "catch-all provision" allows claimants in cancer cases to claim the general evidentiary presumption as to causation even if they cannot do so under Section 108(r) of the Act. *Demchenko v. Workers' Comp. Appeal Bd. (City of Phila.)*, 149 A.3d 406, 417 n.20 (Pa. Cmwlth. 2016).

Guidotti had omitted those studies from his analysis. *Id.*; *see also generally* Report of Dr. Guidotti.

Further, unlike Dr. Guidotti, Dr. Sandler discussed monographs published by the IARC that analyzed specific exposure factors alleged in this case, including diesel exhaust, benzene, TCE, dioxin, and polychlorinated biphenyls (PCBs). *See* Report of Dr. Sandler at 12. According to Dr. Sandler, none of these monographs identified a causal connection between any of these alleged exposures and the development of CLL.[14] *See id.* Thus, Dr. Sandler concluded that there was no scientific evidence demonstrating a link between Claimant's workplace exposures to IARC Group 1 carcinogens and Claimant's particular cancer. *Id.* at 14.

Although Claimant asserts that Dr. Guidotti's opinion was sufficient to establish general causation between several Group 1 carcinogens and CLL, that evidence was specifically rejected by the WCJ. *See* WCJ Dec. at 7-8. The WCJ explained his decision, noting for example that (1) Drs. Guidotti and Sandler agreed on the lack of epidemiological evidence in support for Dr. Guidotti's opinion, (2) Dr. Guidotti had omitted comprehensive studies with results contrary to his opinion, and (3) Dr. Guidotti had not relied on source material from the IARC regarding the carcinogens in question. *See id.*

As in *Malone*, the WCJ considered the evidence and made a reasoned decision to credit one expert opinion over another. *Cf. Malone*. In this case, the WCJ found Dr. Sandler's opinion credible and rejected the opinion of Dr. Guidotti. This decision was neither arbitrary nor capricious and is supported by substantial

---

[14] In closing remarks on the subject of general causation, Dr. Sandler clarified that, in his evaluation of studies regarding a possible relationship between exposure to TCE and development of NHL, a majority of studies did not show a causal association. However, of those studies that did note statistically significant findings, such occurred with exposure at levels 250 times larger than firefighters' exposure. Report of Dr. Sandler at 12.

9

evidence of record.  *See Morocho*, 167 A.3d at 858 n.4; *Kriebel*, 29 A.3d at 769.  We therefore decline to overturn the WCJ's findings on appeal.  *See Sladek*, 195 A.3d at 210; *Rife*, 812 A.2d at 755.

We also reject Claimant's contention that, in accepting the WCJ's findings, the Board unduly increased his burden of proof.  As discussed in *Sladek*, the general causation requirement in Section 108(r) "weeds out claims for compensation for cancers with no known link to Group 1 carcinogens."  195 A.3d at 208.  Here, Claimant simply failed to present credible evidence that his workplace exposure to several Group 1 carcinogens caused his CLL.  Thus, we discern no legal error in the Board's analysis.  *Id.*; Section 108(r) of the Act, 77 P.S. § 27.1(r).

## IV. CONCLUSION

Accordingly, for the foregoing reasons, we affirm.

_____
LORI A. DUMAS, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicholas Caruccio,                          :
                    Petitioner               :
                                :
          v.                              :   No. 726 C.D. 2022
                                :
Shrewsbury Borough (Workers'                :
Compensation Appeal Board),                 :
                 Respondent            :

## **O R D E R**

AND NOW, this 3rd day of October, 2023, the order of the Workers' Compensation Appeal Board, entered July 12, 2022, is AFFIRMED.

LORI A. DUMAS, Judge